

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-18-2005

# Hidayat v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-1349

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Hidayat v. Atty Gen USA" (2005). *2005 Decisions.* Paper 836.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/836

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No: 04-1349

ERWIN HIDAYAT

Petitioner

v.

ATTORNEY GENERAL
OF THE UNITED STATES OF AMERICA,

Respondent

On Petition for Review of an Order of Removal from
the Board of Immigration Appeals
File: A79-318-327
Judge: Anthony Moscato

Submitted Under Third Circuit LAR 34.1(a)
January 19, 2005

Before: ALITO, MCKEE, SMITH, Circuit Judges

(Opinion Filed:   July 18, 2005)

OPINION

McKee, Circuit Judge

Erwin Hidayat petitions for review of the Board of Immigration Appeals' order

affirming the decision of an Immigration Judge denying relief from removal, but granting

voluntary departure.  For the reasons that follow, we will deny the Petition for Review.

1

# I

Hidayat is a native and citizen of Indonesia. He entered the United States on May 14, 1999 on a visitor's visa. Hidayat decided to remain in the United States after his mother informed him that conditions for non-Muslims in Indonesia had deteriorated. He thereafter applied for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"), claiming persecution on account of race, religion and ethnicity (Chinese Catholic).

Hidayat's testimony at the removal proceedings included an account of being assaulted in Indonesia in May, 1998, when a Muslim mob attacked his church, set it on fire, and beat him. Hidayat also testified that he had suffered from prejudice and harassment in Indonesia because of his race and he feared being beaten or killed if he were to return.

The IJ denied his applications for asylum, withholding of removal, and relief under the C.A.T, but granted his application for voluntary departure. The IJ ruled that Hidayat's asylum request was time barred, and that he "failed to establish that his untimely filing of his application was based on exigent circumstances, . . . [or] . . . changed country conditions." The BIA affirmed the IJ's decision without opinion. This Petition for Review followed. We review the IJ's decision because the BIA summarily affirmed the ruling of the IJ. *See Abdulai v. Ashcroft*, 239 F.3d 542, 548-49 (3d Cir. 2001).

## II.

Pursuant to 8 U.S.C. § 1158(a)(2)(B), an alien may not apply for asylum unless s/he "demonstrates by clear and convincing evidence that the application has been filed within 1 year after the date of the alien's arrival in the United States." This time limitation does not apply "if the alien demonstrates to the satisfaction of the Attorney General either the existence of changed circumstances which materially affect the applicant's eligibility for asylum or extraordinary circumstances relating to the delay in filing an application . . . ." 8 U.S.C. § 1158(a)(2)(D). "Changed circumstances" may include "changes in conditions in the applicant's country of nationality." 8 C.F.R. § 1208.4(a)(4). The IJ ultimately found that Hidayat failed to establish that his untimely application resulted from exigent circumstances or changed country conditions in Indonesia.

Although we usually have jurisdiction to review a final order of removal, 8 U.S.C. § 1252(a)(1), we do not have jurisdiction to review the IJ's determination regarding Hidayat's untimely asylum application. 8 U.S.C. § 1158(a)(3). Thus, although Hidayat quotes extensively from the 2002 State Department Report regarding conditions in Indonesia to support his asylum claim, we can not now review the IJ's asylum ruling.

We review the IJ's findings of fact with respect to Hidayat's withholding of removal and C.A.T claim under the substantial evidence standard. We will affirm the IJ's findings if they are "supported by reasonable, substantial and probative evidence on the

3

record considered as a whole." *Balasubramanrim v. INS*, 143 F.3d 157, 161 (3d Cir. 1998) (internal quotation marks and citation omitted).

In order to obtain withholding of removal, an alien must establish by a clear probability that his/her life or freedom would be threatened in the proposed country of deportation or removal due to persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. *Chang v. INS*, 119 F.3d 1055,1066 (3d Cir. 1997). "Clear probability" has been interpreted to mean "more likely than not." *INS v. Cardozo-Fonseca*, 480 U.S. 421, 430 (1987). This imposes a higher burden on the alien than the "well founded fear" standard required for asylum. *Janusiak v. INS*, 947 F.2d 46, 47 (3d. Cir 1991). Thus, if an alien cannot satisfy his/her burden for asylum, s/he can not meet the burden for withholding of removal.

An applicant for protection under the Convention Against Torture must show that s/he is more likely than not to be tortured in the country of removal. 8 C.F.R. § 1208.16(c)(2) & (4).

The IJ found that Hidayat failed to show that he suffered past persecution or that he would suffer future persecution based on his race or religion. Therefore, he denied Hidayat's claim for withholding of removal. The IJ also rejected Hidayat's claim for relief under the C.A.T because Hidayat did not establish that it was more likely than not that he would be tortured upon his return to Indonesia.

Although Hidayat offered testimony regarding unemployed Indonesians harassing

4

him on the street and demanding money, the IJ correctly concluded that this "harassment" did not rise to the level of "persecution." Moreover, the record suggests that the harassment was "on account of" Hidayat's perceived wealth, not his race or religion.

More fundamentally, the IJ was not convinced that Hidayat was either a Catholic or a member of any other Christian denomination, because he testified that he was still "searching for religion." He demonstrated little knowledge about the basic teaching of Christianity and Catholicism, and the IJ was understandably reluctant to accept Hidayat's testimony about his religious persecution. Although the law certainly does not require that an alien possess the knowledge of a sectarian scholar to claim persecution on account of religion, the IJ could consider Hidayat's lack of knowledge when evaluating his testimony about religious persecution.

Moreover, the single incident of the attack on the church and the beating in 1998, though troubling, did not rise to the level of religious persecution. In addition, the IJ could consider Hidayat's testimony that he initially planned to return to Indonesia when he came to the United States, in assessing his fear of future persecution.

We believe the IJ adequately considered the conditions in Indonesia and her findings are supported by substantial evidence. Hidayat argues that, since he submitted sufficient background material to document a "widespread" persecution of Christians and non-Muslims in Indonesia, he established a pattern or practice under 8 C.F.R. § 208.13(b)(2)(iii). He therefore claims that the IJ's decision is not supported by substantial

5

evidence.

The regulations state that:

> the . . . immigration judge shall not require the applicant to provide evidence that there is a reasonable possibility he or she would be singled out individually for persecution if:
> (A) The applicant establishes that there is a pattern or practice in his or her country of nationality . . . of persecution of a group of persons similarly situated to the applicant on account of race, religion, nationality, membership in a particular social group, or political opinion; and
> (B) The applicant establishes his or her own inclusion in, and identification with, such group of persons such that his or her fear of persecution upon return is reasonable.

The IJ explained that, although applicable regulations allow Hidayat to establish his claims by relying upon a pattern or practice of persecution of similarly situated persons, the evidence did not establish a pattern or practice regarding persecution of Chinese. Moreover, assuming *arguendo*, a pattern or practice of persecution of Christians, Hidayat's claim would still fail because he did not establish that he was a Christian.

In order to obtain relief under the C.A.T an applicant must show that the torture suffered was an intentional governmental act, meaning that it was inflicted "by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 1208.18(a)(1).

Hidayat states that he is more likely than not to be tortured because Christians have been attacked in Indonesia and the Indonesian government has not effectively punished

6

perpetrators. Regardless of the truth or falsehood of these assertions, they do not legally suffice. Even if a country cannot guarantee a person's safety - even if it cannot prosecute and punish most criminals after they have inflicted harm- it does not mean that country's public officials are "acquiescing" to torture. The IJ found that Hidayat was accosted by beggars and attacked by a mob of private citizens, not government agents, and the record does not compel a different conclusion.

## III.

For all of the reasons set forth above, we will deny the Petition for Review.

_____

7